1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

USA,

Civil No.    08-mj-0560-POR

11

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

12

v.

13

GEORGE RAYMOND WILLIAMS,

14

Detainee.

15        This matter having come before this Court pursuant to Title 18 United States Code, Section

16   3181, et. seq., for a hearing at the request of the Republic of Mexico for the extradition of George

17   Raymond Williams, and this Court having held an extradition hearing on August 14, 2008, and

18   having considered the evidence received at the hearing along with the arguments of counsel and the

19   papers submitted prior to the hearing, this Court hereby affirms its oral ruling of August 14, 2008,

20   that George Raymond Williams is extraditable under the extradition treaty between the United States

21   of America and the Republic of Mexico, Treaty 31 U.S.T. 5059, TIAS 9656 ("Treaty").  This Court

22   also makes the following findings of fact and conclusions of law.

23                                          **I.**

24                         **BACKGROUND OF THE CASE**

25        On February 25, 2008, the United States Attorney's Office for the Southern District of

26   California, acting on behalf of the Republic of Mexico, presented a complaint for arrest to the

27   Honorable William McCurine, Jr.  (Dkt. No. 1.)  The complaint requested that the Court issue a

28   warrant for the arrest of George Raymond Williams with a view toward his extradition.  At that

1  time, Williams was incarcerated at California's RJ Donovan State Correction Center.  The United

2  States Attorney's Office presented the complaint against Williams pursuant to the extradition treaty

3  between Mexico and the United States.

4      The complaint represented that Williams was charged in the Mexican state of Jalisco with

5  corruption of minors and child prostitution in violation of Articles 136 and 174-bis of the Penal

6  Code of the State of Jalisco.  According to the complaint, Williams invited two minors to his house,

7  offered to pay them for sex, sodomized one of them, and attempted to have sex with the other.

8      Williams was arrested pursuant to the arrest warrant issued by Judge McCurine on March 11,

9  2008.  (Dkt. No. 5.)  Williams remained detained following a hearing before the undersigned

10  Magistrate Judge on the same date.

11      On May 21, 2008, the United States Attorney's Office filed an official extradition request,

12  along with certified documents in support of the extradition request. (Dkt. No. 9.)  The certified

13  documents include Diplomatic Note No. 03490 from the Embassy of Mexico, dated May 8, 2008,

14  formally requesting the extradition of Williams. (Id at 7.)  The filing of certified documents

15  permitted Mexico to go forward with extradition proceedings under the Treaty.  This Court held an

16  extradition hearing on August 14, 2008.

17                                   **II.**

18              **GENERAL PRINCIPLES REGARDING EXTRADITION HEARINGS**

19      The sole purpose of an extradition hearing, held pursuant to 18 U.S.C. § 3184 (and the

20  applicable Extradition Treaty), is to determine whether or not the individual who has been arrested

21  in the United States pursuant to a complaint filed on behalf of a foreign government is subject to

22  surrender to the requesting country.  The substantive right of a foreign country to request the return

23  of a fugitive and the duty of the United States to deliver the fugitive depends entirely on the

24  existence of a treaty between the requesting nation and the United States.  18 U.S.C. § 3181, Factor

25  v. Laubenheimer, 290 U.S. 276 (1933).  To invoke its right to extradite a fugitive, the requesting

26  nation must submit its request to a state or federal court.  18 U.S.C. § 3184.  The court determines

27  whether the fugitive is subject to extradition, and, if so, must order the fugitive's commitment and

28  certify the supporting record to the Secretary of State.  Id.  The Secretary of State bears the

1    responsibility for deciding whether surrender will ultimately occur.  18 U.S.C. § 3186; Escobedo v.

2    United States, 623 F.2d 1098, 1105 n.20 (5th Cir.), cert. denied, 449 U.S. 1036 (1980).  The fugitive

3    cannot obtain direct appellate review of either the extraditing court's decision, Collins v. Miller, 252

4    U.S. 364, 369 (1920); Gusikoff v. United States, 620 F.2d 459, 461 (5th Cir. 1980), or the Secretary

5    of State's exercise of discretion.  Escobedo, 623 F.2d at 1105.  The fugitive may obtain habeas

6    corpus relief on the grounds of lack of probable cause, failure to prove identity, or failure to charge

7    an offense within the meaning of the treaty.  Gusikoff, 620 F.2d at 461.

8         The Government must prove several elements before Williams may be found extraditable by

9    this Court.  These elements roughly fall into six categories: (1) that the Court has jurisdiction to

10   decide the question of extradition; (2) that a treaty of extradition exists between the United States

11   and the Republic of Mexico and that the crimes with which Williams has been charged are covered

12   by that treaty; (3) that Williams has been charged with such offenses in the requesting country; (4)

13   that the offenses with which Williams is charged in the Republic of Mexico are also offenses in the

14   United States (dual criminality); (5) that Williams is the same individual charged with the offenses

15   by the requesting party (identity); and (6) that there is some evidence warranting the finding that

16   there is reasonable ground to believe Williams is guilty (probable cause).  Caplan v. Vokes, 649

17   F.2d 1336 (9th Cir. 1981); Fernandez v. Phillips, 268 U.S. 311 (1925).

18        In short, the paramount principle of every extradition proceeding is to determine whether

19   probable cause exists to believe the person whose surrender is sought has committed the crime for

20   which his extradition is requested.  Collins v. Loisel, 259 U.S. 309, 315 (1922); Gusikoff, 620 F.2d

21   at 462.

22                                              **III.**

23                  **SUMMARY OF FACTS UNDERLYING ALLEGED OFFENSE**[1]

24        The Republic of Mexico seeks to extradite Williams on the charges of corruption of minors

25   and child prostitution.  It is alleged that Williams invited two children into his home, showed them

26

27        [1] The facts summarized below were taken from the sworn statements of Victor Hugo Carrasco
     Berumen, Coordinating Public Prosecutor for Special Affairs, Jalisco, which transcribe the statements
28   of witnesses to this case, including the child victims, the arresting officers, the defendants, and the male
     victim's mother.  (Dkt. No. 9-3 at 3, 6, 11, 14, 51, 65.)

1 | pornographic magazines and a pornographic movie, offered to pay them money for sex, and

2 | sodomized one of the children.  The facts, as alleged, are as follows:

3 |      On April 20, 2003, a thirteen year-old boy and a nine year-old girl were out together in

4 | Puerto Vallarta, Jalisco, Mexico, and encountered Paulina Romero Tovar, who the boy knew.

5 | Paulina invited them to go with her to a friend's home and took them to the home of the Detainee,

6 | George Raymond Williams.  The boy had been to the home previously.

7 |      Williams gave sodas to the boy and girl and played a pornographic movie on his television.

8 | Tovar left the apartment after ten minutes, having received fifty pesos from Williams, and told the

9 | boy and girl that she would be back to pick them up.  Williams showed pictures to the boy and girl

10 | of naked men, women, boys and girls, which he kept in a pink folder.

11 |      Williams began to touch the girl's chest and stomach, and she pushed his hand away when he

12 | attempted to touch her vagina.  He told her to take off her clothes and she refused.  He tried to get

13 | the girl into his bedroom but she refused.

14 |      Williams took the boy into his room instead and offered the boy fifty pesos to take off his

15 | pants.  Williams took measurements of the boy's legs, penis and stomach.  Williams asked the boy

16 | to have sex with him and the boy refused, so Williams offered the boy fifty pesos to have sex with

17 | him.  Williams had the boy touch Williams' penis, and then Williams lay the boy face-down on the

18 | bed.  Williams proceeded to sodomize the boy until the girl began to knock on the bedroom door and

19 | shout the boy's name.

20 |      Williams opened the bedroom door and invited the girl to come in and to have sex with the

21 | boy.  When the girl refused, Williams offered to pay her fifty pesos.  Williams asked the girl to have

22 | sex with him, and also offered to pay her fifty pesos to take off her clothes and let him photograph

23 | her.

24 |      Williams went into the bathroom and the girl ran from the apartment.  The boy went back

25 | into the bedroom and took photographs from Williams' pink folder, then followed the girl out of the

26 | apartment.  The boy called the police from a payphone outside of the apartment building.  The girl

27 | saw Williams leave the apartment with his pink folder.

28 |      When police arrived, the boy showed them the pictures that he had taken from Williams.

1   The police drove the boy and girl in the direction that Williams had gone.  The police found

2   Williams one block away, sitting on the sidewalk with the pink folder, and they arrested him.

3                                          **IV.**

4                    **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

5          After consideration of the documentary evidence and oral argument, this Court finds that the

6   government of Mexico, as represented by the United States Department of Justice, has established

7   that:

8          1.      The documents submitted in support of Mexico's extradition request are in proper

9   form and are properly authenticated.  Section 6(b) of Article 10 of the Extradition Treaty and 18

10  U.S.C. § 3190 require that the documents submitted by Mexico be received into evidence if the

11  principal consular officer of the United States has certified the authentication of the documents.  The

12  documents were certified on May 2, 2008, by Charles V. Barclay, Charge d'Affaires for the United

13  States, in accordance with 18 U.S.C. § 3190.  (Dkt. 9 at 26.)  At the time the documents were

14  certified, Mr. Barclay was the principal consular officer of the United States in Mexico.  Thus, the

15  authenticated documents were properly received into evidence.

16         2.      This Court has jurisdiction to determine the question of extradition.  18 U.S.C. §

17  3184.  This Court also has jurisdiction over Williams, who is in custody before this Court, and was

18  found in the Southern District of California.  Williams does not challenge the authority of this Court

19  to conduct his extradition hearing.

20         3.      There is a valid extradition treaty in force and effect between the United States and

21  the Republic of Mexico.  The Treaty was signed on May 4, 1978, and went into effect on January

22  25, 1980.  31 U.S.T. 5059.  David O. Buchholz, Attorney Adviser, Office of the Legal Adviser,

23  Department of State, United States of America, provided a declaration attesting that the Extradition

24  Treaty is in full force and effect between the United States and Mexico.  (Dkt. No. 9 at 4.)  This

25  declaration was properly sealed by the Secretary of State, Condoleezza Rice.  (Dkt. No. 9 at 5.)

26  Additionally, Williams does not dispute the fact that there is a valid treaty in force and effect

27  between the United States and Mexico.

28         4.      The crimes charged against Williams are covered by the Treaty and are enumerated

1   in the Treaty's Appendix.  The offense of "corruption of minors" is listed in paragraph five of the

2   Appendix, and "promoting or facilitating prostitution" is listed in paragraph six.  31 U.S.T. 5059.

3   Williams does not dispute that the crimes charged are covered by the Treaty.

4        5.    There are criminal charges pending against Williams in Mexico.  The arrest warrant

5   issued in Mexico on February 9, 2004, charges Williams with Corruption of Minors and Child

6   Prostitution.  (Dkt. No. 9 at 8.)  This was a second arrest warrant, issued after Williams had been

7   freed on bail and failed to appear for his criminal case.  Williams does not dispute that there are

8   charges pending against him in Mexico for the offenses for which extradition is sought.

9        6.    The offenses with which Williams is charged in the Republic of Mexico are also

10  offenses in the United States (dual criminality).  Article 2 of the Treaty provides in pertinent part:

11  "Extradition shall take place, subject to this Treaty, for wilful acts which . . . are punishable in

12  accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of

13  which shall not be less than one year."  In accordance with Article 2, the Court will consider

14  "similar criminal provisions of federal law or, if none, the law of the place where the fugitive is

15  found or, if none, the law of the preponderance of states."  Theron v. United States Marshal, 832

16  F.2d 492, 496 (9th Cir. 1987), cert. denied, 486 U.S. 1059, (1988).  The Supreme Court explained

17  the dual criminality requirement in Collins v. Loisel, 259 U.S. 309, 312 (1922):

18        The law does not require that the name by which the crime is described in the two
          countries shall be the same; nor that the scope of the liability shall be coextensive, or
19        in other respects, the same in the two countries.  It is enough if the particular act
          charged is criminal in both jurisdictions.
20

21  Citing Collins, some courts have held that the dual criminality doctrine requires only that the

22  act alleged to have been committed constitute a crime in both countries.  In Bozilov v. Siefert, 983

23  F.2d 140 (9th Cir. 1992), the Court of Appeals for the Ninth Circuit further explained this concept:

24         "Dual criminality does not require that an offense in a foreign country have an
          identical counterpart under the laws of the United States."  Dual criminality requires
25        only that the acts alleged constitute a crime in both jurisdictions.  Each state may
          name and penalize the crime differently.
26

27  Id. at 142 (citations omitted) (quoting in part, Theron, 832 F.2d at 496).  In other words, the Ninth

28  Circuit stated that the elements of the alleged offense need not be identical as long as the same

- 6 -

1   conduct constitutes a crime in both countries.  <u>Oen Yin-Choy v. Robinson</u>, 858 F.2d 1400, 1404-05

2   (9th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1106 (1989).

3          Mexico is proceeding on an arrest warrant which charged Williams with Corruption of

4   Minors in violation of Article 136 of the Criminal Code of the State of Jalisco, and Child

5   Prostitution in violation of Article 174-bis of the Criminal Code of the State of Jalisco.  Article 138

6   provides in pertinent part: "An imprisonment penalty ranging from three to six years . . . shall be

7   imposed on whoever induces or provokes deterioration in the moral concepts, values or habits or

8   alters the personal development of an under eighteen year-old minor."  (Dkt. 9 at 41.)  A person

9   commits the offense described in Article 138 if they encourage a child or an adolescent to "Their

10  initiation into sexual activity" or to "The practice of homosexual conduct."  (<u>Id</u>.)  Article 174-bis

11  provides penalties for one who "engages in sexual activity or obtains the materialization of any other

12  erotic sexual act in exchange for money or its equivalent, with a person who has not attained the age

13  of eighteen."  (<u>Id</u>.)  If the victim of an offense pursuant to Article 174-bis is younger than fifteen

14  years old, the imprisonment penalty is four to seven years.  (<u>Id</u>.)

15         In the State of California, the facts alleged would constitute the offenses of: Sodomy of a

16  Child Under 14, in violation of California Penal Code 286; Lewd and Lascivious Acts With Minors,

17  in violation of California Penal Code 288; and Assault with Intent to Commit Rape or Lascivious

18  Acts Upon a Child, in violation of California Penal Code 220.  Each of these offenses are punishable

19  by more than a year of imprisonment.  California Penal Code 286(c)(1) provides that: "Any person

20  who participates in an act of sodomy with another person who is under 14 years of age and more

21  than 10 years younger than he or she shall be punished by imprisonment in the state prison for three,

22  six, or eight years."  California Penal Code 288 provides that: "Any person who willfully and lewdly

23  commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a

24  child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the

25  lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished

26  by imprisonment in the state prison for three, six, or eight years."  California Penal Code 220

27  provides that a person who assaults another with the intent to commit rape or sodomy shall be

28  punished by a minimum term of two years imprisonment.

1    Although the offenses are not identically phrased in California and Jalisco, the crimes of

2    sodomy of a child and lewd and lascivious acts with minors are substantially analogous to the crime

3    of corruption of minors under Article 138 of the Criminal Code of the State of Jalisco, set forth

4    above.  The crime of child prostitution under Article 174-bis of the Criminal Code of the State of

5    Jalisco entails engaging in any "erotic sexual act" with a minor in exchange for money, and

6    engaging in such an act constitutes the crime of lascivious acts with minors in California regardless

7    of whether money is exchanged.  Additionally, the acts with which Williams is charged constitute

8    the crime of assault with intent to commit rape or lascivious acts upon a child in California.  The

9    crimes charged are punishable by more than one year imprisonment in both the requesting and

10   requested nations.  Accordingly, the requirement of dual criminality under the Treaty is satisfied.

11       As stated above in paragraph 4, the crimes charged against Williams are also specifically

12   enumerated in the Appendix to the Treaty.

13                                              **V.**

14                                         **IDENTITY**

15       The detainee contends that there is insufficient evidence to find that he is the person charged

16   with offenses in Mexico.  The detainee contends that the evidence presented by Mexico as proof that

17   he is the same person sought as a fugitive cannot be relied upon by this Court because it is hearsay

18   evidence under the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36

19   (2004).  The detainee argues that copies of a photograph submitted by Mexico in the request for

20   extradition, which is alleged to have been taken at the time of George Raymond Williams's arrest in

21   Jalisco (Dkt. No. 9-4 at 49.), are presented without foundational evidence relating them to that

22   arrest.  The purpose of the extradition hearing is for a court determination as to whether there is

23   "evidence sufficient to sustain the charge under the provisions of the proper treaty."  18 U.S.C. §

24   3184.  The Treaty between the United States and the Republic of Mexico provides that extradition

25   "shall be granted only if the evidence be found sufficient, according to the laws of the requested

26   party . . . to justify the committal for trial of the person sought."  31 U.S.T. 5059, Article 3.  Thus in

27   accordance with the Treaty, the Court's role is to determine whether there is sufficient evidence to

28   find probable cause that the detainee committed the charged offenses.  United States ex rel

1   Sakaguchi v. Kaulukukui, 520 F.2d 726, 730-731 (9th Cir. 1975).

2        The Federal Rules of Evidence, which prescribe authentication procedures and the

3   admissibility of hearsay evidence, do not apply in extradition proceedings.  Fed. R. Evid.

4   1101(d)(3). The admissibility of evidence in extradition proceedings is governed by 18 U.S.C. §

5   3190, which provides that:

6        [d]epositions, warrants, or other papers or copies thereof offered in evidence upon the
         hearing of any extradition case shall be received and admitted as evidence on such
7        hearing for all the purposes of such hearing if they shall be properly and legally
         authenticated so as to entitle them to be received for similar purposes by the tribunals of
8        the foreign country from which the accused party shall have escaped, and the certificate
         of the principal diplomatic or consular officer of the United States resident in such
9        foreign country shall be proof that the same, so offered, are authenticated in the manner
         required.
10

11  "With regard to the admissibility of evidence, the general United States extradition law requires only

12  that the evidence submitted be properly authenticated." Barapind v. Enomoto, 400 F.3d 744, 748 (9th

13  Cir. 2005) (quoting Emami v. United States Dist. Court, 834 F.2d 1444, 1451 (9th Cir. 1987).  The

14  Ninth Circuit has noted that the elimination of hearsay evidence would defeat the purpose of

15  extradition proceedings, which is "to obviate the necessity of confronting the accused with the

16  witnesses against him."  United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730 (9th Cir.

17  1975).

18        Having been certified by the principal diplomatic officer of the United States resident in

19  Mexico, the evidence presented against the detainee is properly authenticated pursuant to 18 U.S.C.

20  3190.  (See above, Section IV, Paragraph 1)

21        In addition to the contested photograph, Mexico presents the following descriptions of the

22  perpetrator of the charged offenses:

23        A sworn statement of Alejo Isaac Lemuz Mora, Public Prosecutor of the Federation in the

24  Office of the Attorney General of the Republic's Office of the Assistant Attorney General of Legal

25  and International Matters, describes the George Raymond Williams being sought for extradition as

26  being born in September 1936, having a husky build, white skin, salt and pepper hair, a height of 1.7

27  meters and a weight of approximately 95 kilograms.  (Dkt. 9 at 49.)

28        The George Raymond Williams who was being detained in Jalisco on April 22, 2003, is

1   described by Public Prosecutor Victor Hugo Carrasco Berumen as a fat, partially-bald, white-

2   skinned man with a gray beard and mustache, a square face, a big mouth, a small nose, blue-colored

3   eyes, and a wide forehead.  Williams is further described as being 1.7 meters tall, with no tattoos or

4   scars.  (Exhibit 12, Dkt. No. 9-3 at 57.)

5       The boy who accused Williams of the charged offenses provided a statement to Public

6   Prosecutor Berumen on April 21, 2003.  (Exhibit 8, Dkt. No. 9-3 at 6.)  That statement gives the

7   following description: "George is fat, bald, wears glasses, has blue or green eyes, and is old, he has a

8   beard."  (Id. at 7.)  The boy also identified that the person who was being detained at that time was

9   the person who he knew as George, whose home he had been in earlier.

10      The girl who accused Williams of the charged offenses also provided a statement to

11  Prosecutor Berumen on April 21, 2003.  (Exhibit 10, Dkt. No. 9-3 at 14.)  Her statement gives the

12  following description: "he is an old man, almost very old, fat complexion, white-skinned, he has

13  beard and mustache, and he wear[s] glasses."  (Id. at 17.)   The girl identified the person who had

14  been arrested as the person who had committed the charged offenses.

15      The Court has carefully examined both the color and black-and-white copies of the

16  photograph presented to the Court by the Republic of Mexico.  The Court also compared the

17  descriptions provided in the request to the person presented before the Court.  The person brought

18  before the Court appeared to be approximately 70 years-old, had white skin, light-colored eyes, a

19  partially bald head and a beard and mustache of white hair as well as some remaining gray hair.  The

20  detainee has a husky build and appeared to have a weight of approximately 95 kilograms - which is

21  approximately 209 pounds, and a height of 1.7 meters - approximately five-and-a-half feet.

22      The Court finds probable cause to believe that the person before the Court is the George

23  Raymond Williams for whom the Republic of Mexico seeks extradition.

24                                    **VI.**

25                            **<u>PROBABLE CAUSE</u>**

26      Finally, this Court must determine whether there is some evidence warranting a finding that

27  there is reasonable ground to believe that Williams is guilty of committing the crimes for which he is

28  charged.

1    The issue of probable cause in extradition hearings is defined in accordance with the federal

2    law and has been described as "evidence sufficient to cause a person of ordinary prudence and

3    caution to conscientiously entertain a reasonable belief of the accused's guilt." Coleman v. Burnett,

4    477 F.2d 1187 (D.C. 1973); see Sidona v. Grant, 619 F.2d 167 (2nd Cir. 1980); Greci v. Birknes,

5    527 F.2d 956, 959 (1st Cir. 1976).

6    Applying this standard to the evidence presented by Mexico, a showing of probable cause

7    has been made with respect to the criminal charges for which extradition is sought.

8    A person is guilty of the charged crime of "Corruption of Minors", in the state of Jalisco,

9    when that person "induces or provokes deterioration in the moral concepts, values or habits or alters

10    the personal development of an under eighteen year-old minor." (Dkt. 9 at 41.)  A person does so

11    when, by any means, the person facilitates, provokes, induces or fosters in the victim: . . .(iii) their

12    initiation into sexual activity; (iv) the practice of homosexual conduct . . ."  The crime of "Child

13    Prostitution" is violated when a person "engages in sexual activity or obtains the materialization of

14    any other erotic sexual act in exchange for money or its equivalent, with a person who has not

15    attained the age of eighteen or lacks capactiy." (Id.)

16    The following evidence presented to this Court supports the charges that Williams is guilty

17    of corruption of minors and of child prostitution:

18    1. On April 21, 2003, Public Prosecutor Victor Hugo Carrasco Berumen took the statement

19    of Municipal Policeman Roberto Noyola Bracamontes, who responded to the report of a person

20    giving pornography to minors on April 20, 2003.  (Exhibit 7, Dkt. No. 9-2 at 77.)  The policeman

21    stated that when he and his partner arrived at the scene of the report, a boy and a girl showed them

22    photographs that a man had given to them.  The photographs depicted sexual acts.  The police

23    officers took the boy and girl into their patrol car and found a man whom the children identified as

24    the man who gave them the photographs.  The man was in possession of additional pornographic

25    photographs which depicted adults as well as children.  The police took him into custody.

26    2.    Public Prosecutor Victor Hugo Carrasco Berumen also took the statement of Municipal

27    Policeman Ricardo Gordian Castillon, the partner of Policeman Bracamontes.  (Exhibit 7, Dkt. No.

28    9-3 at 3.) Castillon reported that the officers responded to an announcement of a person giving

pornography to minors and that the officers found the boy and girl who made the report. The boy and girl identified a man one block away as being the person who gave them the photographs, and the man was in possession of additional pornographic photographs. The police officers arrested the man, and the man identified himself as being an American named "George."

3. Public Prosecutor Victor Hugo Carrasco Berumen also took a statement from the boy whom the police encountered. (Exhibit 8, Dkt. No. 9-3 at 6.) He stated his age was thirteen and that he went with his friend, a nine year-old girl, to a house with another friend, Paulina Romero Tovar. The boy knew the man at the house by the name George, and stated that George offered sodas to the boy and girl, and showed them pornographic photographs that he took from a pink folder. He also made them watch a pornographic movie.

According to the boy's statement, Williams took the boy into his room and undressed himself and took off the boy's shirt. He told the boy to take off his pants and when the boy refused, Williams offered to pay the boy fifty pesos to take off his pants. Williams took measurements of the boy's legs, penis and stomach. Williams asked the boy to have sex with him and the boy refused, so Williams offered the boy fifty pesos to have sex with him and the boy agreed. Williams had the boy touch Williams' penis, and then Williams lay the boy face-down on the bed. Williams sodomized the boy, and the boy stated to police that it hurt. The girl began to knock on the bedroom door and shout the boy's name, at which point Williams put on his clothes and threatened harm to the boy's mother if the boy said anything about what had happened.

The boy stated that when Williams went into the bathroom, the girl ran from the apartment. The boy went back into the bedroom and took photographs from the folder that Williams had shown to them when they arrived at the apartment. When the boy and girl got outside to the street, the boy called the police from a payphone.

The boy also told police that he had been to Williams' house twice before, and that both times he had gone with Paulina Romero Tovar. The first time, Williams had offered to pay him to photograph him naked. The second time, Williams had paid the boy thirty pesos to sodomize him.

4. Public Prosecutor Victor Hugo Carrasco Berumen also took a statement from the female who was with the boy at Williams' house. (Exhibit 10, Dkt. No. 9-3 at 14.) She stated that her age is

1    nine years-old.  She told the prosecutor that she and the boy had encountered Paulina Romero Tovar,

2    and that the boy knew her and they accompanied her to go to her friend's home.  She stated that the

3    boy had been to the home previously, and that the boy called the man George.

4         According to the girl's statement, George gave sodas to the boy and girl and showed them a

5    pornographic movie.  The girl did not want to watch the movie and turned away from it, but George

6    held her face to make her watch it.  George also showed the boy and girl pornographic pictures that

7    he took from a pink folder.

8         George touched the girl's chest and stomach, and she pushed his hand away when he

9    attempted to touch her vagina.  He told her to take off her clothes and she refused.  He tried to get

10    the girl into his bedroom but she refused.   George took the boy into his room instead.

11         After some time, the girl knocked on the bedroom door.  George opened the bedroom door

12    and asked the girl again to take off her clothes.  He also asked her to take a bath with the boy and to

13    have sex with him.  The girl refused and George offered to pay her fifty pesos. George also asked

14    the girl to take off her clothes so that he could measure her vagina, and he asked her to have sex with

15    him   George again offered to pay her fifty pesos to take off her clothes, and to let him photograph

16    her and the boy naked.

17         George went into the bathroom and the girl ran from the apartment.  The girl saw George

18    leave the apartment with his pink folder of pictures.  When the police arrived, the girl was able to

19    show them the direction that George had gone.

20         5. Public Prosecutor Victor Hugo Carrasco Berumen also took a statement from the man

21    who was arrested by the police after the boy and girl identified him on the street.  (Exhibit 12, Dkt.

22    No. 9-3 at 51.)  The man who was arrested at that time stated that his name is George Raymond

23    Williams.  He told the prosecutor that he knew Paulina Romero Tovar for five years and that he had

24    asked her several times to get children for him to photograph naked.  He stated that some of the

25    photographs that were in his possession when he was arrested were photographs that were taken by

26    him.

27         Williams told the prosecutor that on April 20, 2003, when the boy and girl accusers came to

28    his home, he showed them pornographic photographs and a pornographic movie.  Williams stated

that he tried to caress the girl but that she refused him.  According to Williams, he then took the boy into his bedroom and undressed him and took measurements of his body and of his penis.  Williams stated that when he laid the boy down on his bed and was behind him, he noticed that the boy was afraid and he told the boy that he would give him fifty pesos to allow him to have intercourse with him.  Williams told the prosecutor that he then proceeded to penetrate the boy's anus with his penis and that he did not stop when the boy complained that he was in pain because he had intercourse with him twice before.

Williams said that after his intercourse with the boy, he let the children leave, but that he remained outside of the building waiting for them to return because the children left without receiving money.

6.  A medical examination of the male victim was conducted by Gerardo Armando Fernandez Rodriguez, MD, at the Forensic Sciences Institute of Jalisco, on April 21, 2003.  (Exhibit 17, Dkt. No. 9-3 at 76.)  That examination revealed signs of physical violence and specifically, a wound and swelling in the boy's anus.

7.  Public Prosecutor Victor Hugo Carrasco Berumen also took a statement from the mother of the male victim.  (Exhibit 9, Dkt. No. 9-3 at 11.)  She recalled her search to find her son on April 20, 2003, before she learned that he was with the police.  She stated that she had previously seen the man who had been taken into police custody, who she knew as George.  One year prior, Paulina Romero Tovar, who is the wife of the mother's brother-in-law, had taken her fifteen year-old daughter out for an afternoon.  Later the mother went to look for Tovar and her daughter and had found them at George's apartment.  The daughter later told her mother that Tovar had taken her to the apartment and that she had been undressed and had been given money.

8.  Public Prosecutor Victor Hugo Carrasco Berumen also took a statement from the co-defendant, Paulina Romero Tovar.  (Exhibit 15, Dkt. No. 9-3 at 65.)  She stated that she met George Raymond Williams when she was thirteen years-old and he had paid her fifty pesos to allow him to take naked photographs of her.  Tovar stated that on other occasions he paid her fifty pesos when he touched her over her clothing.  She told the prosecutor that she had brought other children to his home as well, and that she did so with the male and female accusers in the current case.  She stated

08mj560

1  that Williams had offered them sodas and put on a pornographic movie, and that she had left after

2  ten minutes and Williams gave her fifty pesos.

3      9.  Public Prosecutor Victor Hugo Carrasco Berumen reported on a search of George

4  Raymond Williams' home which occurred on April 21, 2003.  (Exhibit 14, Dkt. No. 9-3 at 62.)

5  Williams accompanied the investigators at the search.  Williams identified a pornographic movie

6  that was found in the VCR as the movie shown to the boy and girl the previous day.  The

7  investigators also found photographs of adults engaging in intercourse with children.

8                                          **VI.**

9                                  **<u>CONCLUSION</u>**

10      This Court has jurisdiction to hear this extradition matter and has jurisdiction over Williams.

11  Williams is the person sought by Mexico in this extradition proceeding.  Probable cause exists to

12  believe that Williams committed the offense Corruption of Minors, in violation of Article 136 of the

13  Criminal Code of the State of Jalisco, and attempted the offense of Child Prostitution in violation of

14  Article 174-Bis of the Criminal Code of the State of Jalisco.  The offenses charged are extraditable

15  offenses under the valid extradition treaty between Mexico and the United States.  The offenses are

16  punishable under the laws of both the United States and Mexico.  Therefore, the Court GRANTS the

17  request for extradition with respect to the charged offenses.

18      The extradition request and the supporting documents admitted into evidence during the

19  hearing are properly certified and authenticated or otherwise admissible within the discretion of the

20  Court.

21      Accordingly, the Court will certify the above findings, and all documents admitted into

22  evidence, to the Secretary of State, pursuant to 18 U.S.C. § 3184.

23  //

24  //

25  //

26  //

27  //

28  //

1   This order shall be stayed for a period of thirty (30) days from the date this order is stamped

2   "filed", in order to permit Williams to file a petition for writ of habeas corpus in accordance with his

3   request to the Court.  At the conclusion of the thirty-day stay, if a habeas petition has not been filed,

4   the Department of Justice shall prepare a certification and order of commitment consistent with this

5   memorandum as required by 18 U.S.C. § 3184.

6   **IT IS SO ORDERED**.

7   DATED:  September 10, 2008

8

9   LOUISA S PORTER
    United States Magistrate Judge

08mj560